1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE G. PADILLA, | ) Case No. CV 12-1197 JC |
|             Plaintiff, | ) |
| | ) MEMORANDUM OPINION AND |
|     v. | ) ORDER OF REMAND |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social | ) |
| Security, | ) |
|             Defendant. | ) |

_____

**I.    SUMMARY**

On February 17, 2012, plaintiff George G. Padilla ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; February 23, 2012 Case Management Order ¶ 5.

///

1

1    Based on the record as a whole and the applicable law, the decision of the
2    Commissioner is REVERSED AND REMANDED for further proceedings
3    consistent with this Memorandum Opinion and Order of Remand.

4    **II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE**
5    **DECISION**

6    On December 8, 2007, plaintiff filed an application for Disability Insurance
7    Benefits. (Administrative Record ("AR") 21, 142). Plaintiff asserted that he
8    became disabled on July 31, 2007, due to cervical disc disease, pain in both feet,
9    and right shoulder rheumatoid arthritis. (AR 169). The Administrative Law Judge
10   ("ALJ") examined the medical record and heard testimony from plaintiff (who was
11   represented by counsel), a medical expert and a vocational expert on July 15,
12   2010. (AR 41-57).

13   On September 20, 2010, the ALJ determined that plaintiff was not disabled
14   through the date of the decision. (AR 21-30). Specifically, the ALJ found:
15   (1) plaintiff suffered from the following severe impairments: degenerative disc
16   disease of the spine, chronic, recurrent neck pain syndrome, and upper extremity
17   radiculopathy (AR 23); (2) plaintiff's impairments, considered singly or in
18   combination, did not meet or medically equal a listed impairment (AR 24-25);
19   (3) plaintiff retained the residual functional capacity to perform light work
20   (20 C.F.R. § 404.1567(b)) with certain additional limitations[1] (AR 25);
21   (4) plaintiff could not perform his past relevant work (AR 28-29); (5) there are
22   jobs that exist in significant numbers in the national economy that plaintiff could
23   perform, specifically "cashier" and "assembler of plastic parts" (AR 29); and

24   _____

25   [1]The ALJ determined that plaintiff: (1) could perform light work; (2) could lift and/or
26   carry and push and pull 20 pounds occasionally and 10 pounds frequently; (3) could stand and
     walk six hours out of an eight hour workday; (4) could sit for six hours out of an eight hour
27   workday; (5) could occasionally reach overhead, climb, balance, stoop, kneel, and crouch;
     (6) could never crawl or climb ladders; and (7) needed to avoid extreme cold, vibrating tools,
28   unprotected heights, and hazardous equipment. (AR 25).

1   (6) plaintiff's allegations regarding his limitations were not credible to the extent
2   they were inconsistent with the ALJ's residual functional capacity assessment
3   (AR 26).

4        The Appeals Council denied plaintiff's application for review.  (AR 1).

5   **III.   APPLICABLE LEGAL STANDARDS**

6        **A.   Sequential Evaluation Process**

7        To qualify for disability benefits, a claimant must show that the claimant is
8   unable "to engage in any substantial gainful activity by reason of any medically
9   determinable physical or mental impairment which can be expected to result in
10  death or which has lasted or can be expected to last for a continuous period of not
11  less than 12 months." <u>Molina v. Astrue</u>, 674 F.3d 1104, 1110 (9th Cir. 2012)
12  (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted).  The
13  impairment must render the claimant incapable of performing the work claimant
14  previously performed and incapable of performing any other substantial gainful
15  employment that exists in the national economy.  <u>Tackett v. Apfel</u>, 180 F.3d 1094,
16  1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

17       In assessing whether a claimant is disabled, an ALJ is to follow a five-step
18  sequential evaluation process:

19       (1)   Is the claimant presently engaged in substantial gainful activity?  If
20          so, the claimant is not disabled.  If not, proceed to step two.

21       (2)   Is the claimant's alleged impairment sufficiently severe to limit
22          the claimant's ability to work?  If not, the claimant is not
23          disabled.  If so, proceed to step three.

24       (3)   Does the claimant's impairment, or combination of
25          impairments, meet or equal an impairment listed in 20 C.F.R.
26          Part 404, Subpart P, Appendix 1?  If so, the claimant is
27          disabled.  If not, proceed to step four.

28  ///

(4)     Does the claimant possess the residual functional capacity to
        perform claimant's past relevant work?  If so, the claimant is
        not disabled.  If not, proceed to step five.

(5)     Does the claimant's residual functional capacity, when
        considered with the claimant's age, education, and work
        experience, allow the claimant to adjust to other work that
        exists in significant numbers in the national economy?  If so,
        the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th
Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at
1110 (same).

   The claimant has the burden of proof at steps one through four, and the
Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262
F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch
v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of
proving disability).

   **B.     Standard of Review**

   Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of
benefits only if it is not supported by substantial evidence or if it is based on legal
error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir.
2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457
(9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable
mind might accept as adequate to support a conclusion."  Richardson v. Perales,
402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a
mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing
Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

   To determine whether substantial evidence supports a finding, a court must
"'consider the record as a whole, weighing both evidence that supports and

4

1 evidence that detracts from the [Commissioner's] conclusion.'" <u>Aukland v.</u>
2 <u>Massanari</u>, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting <u>Penny v. Sullivan</u>, 2 F.3d
3 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming
4 or reversing the ALJ's conclusion, a court may not substitute its judgment for that
5 of the ALJ.  <u>Robbins</u>, 466 F.3d at 882 (citing <u>Flaten</u>, 44 F.3d at 1457).

6 **IV.   DISCUSSION**

7        Plaintiff asserts that the ALJ erred at step five in finding that plaintiff could
8 perform the representative jobs of "cashier" and "assembler of plastic parts" based
9 on testimony from the vocational expert which, without explanation, deviated
10 from the Dictionary of Occupational Titles ("DOT").  (Plaintiff's Motion at 4-11).
11 The Court agrees.  As the Court cannot find that the ALJ's error was harmless, a
12 remand is warranted.

13        **A.    Pertinent Law**

14        If, at step four, the claimant meets his burden of establishing an inability to
15 perform past work, the Commissioner must show, at step five, that the claimant
16 can perform some other work that exists in "significant numbers" in the national
17 economy (whether in the region where such individual lives or in several regions
18 of the country), taking into account the claimant's residual functional capacity,
19 age, education, and work experience.  <u>Tackett</u>, 180 F.3d at 1100 (citing 20 C.F.R.
20 § 404.1560(b)(3)); 42 U.S.C. § 423(d)(2)(A).  The Commissioner may satisfy this
21 burden, depending upon the circumstances, by the testimony of a vocational expert
22 or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part
23 404, Subpart P, Appendix 2 (commonly known as "the Grids").  <u>Osenbrock v.</u>
24 <u>Apfel</u>, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing <u>Tackett</u>).  Where, as here, a
25 claimant suffers from both exertional and nonexertional limitations, the Grids do
26 not mandate a finding of disability based solely on the claimant's exertional
27 limitations, and the claimant's non-exertional limitations are at a sufficient level of
28 severity such that the Grids are inapplicable to the particular case, the

1   Commissioner must consult a vocational expert.[2]  Hoopai v. Astrue, 499 F.3d
2   1071, 1076 (9th Cir. 2007); see Lounsburry v. Barnhart, 468 F.3d 1111, 1116 (9th
3   Cir.), as amended (2006); Cooper v. Sullivan, 880 F.2d 1152, 1155 (9th Cir.
4   1989).

5         The vocational expert's testimony may constitute substantial evidence of a
6   claimant's ability to perform work which exists in significant numbers in the
7   national economy when the ALJ poses a hypothetical question that accurately
8   describes all of the limitations and restrictions of the claimant that are supported
9   by the record.  See Tackett, 180 F.3d at 1101; see also Robbins, 466 F.3d at 886
10  (finding material error where the ALJ posed an incomplete hypothetical question
11  to the vocational expert which ignored improperly-disregarded testimony
12  suggesting greater limitations); Lewis v. Apfel, 236 F.3d 503, 517 (9th Cir. 2001)
13  ("If the record does not support the assumptions in the hypothetical, the vocational
14  expert's opinion has no evidentiary value.").

15        ALJs routinely rely on the DOT "in determining the skill level of a
16  claimant's past work, and in evaluating whether the claimant is able to perform
17  other work in the national economy." Terry v. Sullivan, 903 F.2d 1273, 1276 (9th
18  Cir. 1990) (citations omitted); see also 20 C.F.R. § 404.1566(d)(1) (DOT is source
19  of reliable job information).  The DOT is the presumptive authority on job
20  classifications.  Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995).  An ALJ
21  may not rely on a vocational expert's testimony regarding the requirements of a
22  particular job without first inquiring whether the testimony conflicts with the
23  DOT, and if so, the reasons therefor.  Massachi v. Astrue, 486 F.3d 1149, 1152-53
24  (9th Cir. 2007) (citing Social Security Ruling 00-4p).  In order for an ALJ to
25  accept vocational expert testimony that contradicts the DOT, the record must

26

27        [2]The severity of limitations at step five that would require use of a vocational expert must
28  be greater than the severity of impairments determined at step two.  Hoopai v. Astrue, 499 F.3d
    1071, 1076 (9th Cir. 2007).

1   contain "persuasive evidence to support the deviation." Pinto v. Massanari, 249

2   F.3d 840, 846 (9th Cir. 2001) (quoting Johnson, 60 F.3d at 1435).  Evidence

3   sufficient to permit such a deviation may be either specific findings of fact

4   regarding the claimant's residual functionality, or inferences drawn from the

5   context of the expert's testimony.  Light v. Social Security Administration, 119

6   F.3d 789, 793 (9th Cir.), as amended (1997) (citations omitted).

7       **B.    Pertinent Facts**

8       At the hearing before the ALJ, the medical expert testified at length about

9   plaintiff's medical treatment, related objective medical testing, and persistent

10  complaints of chronic neck upper extremity pain (which, the medical expert

11  pointed out, did not improve with "extensive treatments . . . over a period of

12  time").  (AR 49-52).  The medical expert also opined that, among other

13  limitations, plaintiff's "reaching in all directions, including overhead, [was]

14  limited to occasional overhead reaching."  (AR 53) (emphasis added).

15      Thereafter, the ALJ sought testimony from a vocational expert to determine

16  whether there were jobs in the national economy that plaintiff could perform.  (AR

17  54-56).  The hypothetical question the ALJ posed to the vocational expert

18  consisted of a single sentence, specifically "[w]ould there be other work with what

19  the doctor just said?"  (AR 54).

20      **C.    Analysis**

21      The Court cannot conclude on the current record that the ALJ's findings at

22  step five of the sequential evaluation process are supported by substantial

23  evidence.

24      First, since the ALJ's hypothetical question essentially did no more than

25  incorporate by reference the medical expert's entire hearing testimony, the Court

26  cannot with sufficient precision determine which limitations found by the medical

27  expert formed the basis of the vocational expert's opinion that there were jobs in

28  the national economy that plaintiff could perform.  Specifically, the Court cannot

7

1   determine how the vocational expert interpreted/accounted for the medical

2   expert's ambiguous limitation on plaintiff's ability to reach (*i.e.*, was plaintiff

3   limited to occasional reaching "in all directions" or just occasional "overhead"

4   reaching).  The ALJ's use of such a short-hand hypothetical question was

5   erroneous in this case, particularly since some of the testimony to which the ALJ

6   referred was itself ambiguous.  <u>See</u>, <u>e.g.</u>, <u>Lane v. Astrue</u>, 2012 WL 94567, *5

7   (C.D. Cal. Jan. 11, 2012) (remand warranted where medical expert's testimony

8   was "unclear" and ALJ's findings and hypothetical question based thereon "[were]

9   also ambiguous and/or conclusory"); <u>see also</u> <u>Tackett</u>, 180 F.3d at 1101 (ALJ's

10  hypothetical question "[must] 'set out all of the claimant's impairments' for the

11  vocational expert's consideration") (citation omitted).

12      Second, the Court cannot conclude on the current record that the

13  requirements of the jobs of cashier II and assembler for plastic hospital parts are

14  consistent with plaintiff's residual functional capacity.  For example, as noted

15  above the medical expert testified that plaintiff was limited to only occasional

16  reaching either "in all directions" or "overhead."  (AR 53).  The vocational expert

17  testified that, in spite of such limitation, plaintiff (or a hypothetical person with

18  plaintiff's characteristics) could perform the jobs of cashier II and assembler for

19  plastic hospital parts.  (AR 54-55).  According to the DOT, however, such jobs

20  require "frequent[]" reaching.  (DOT §§ 211.462-010 [cashier II], 712.687-010

21  [assembler for plastic hospital parts ]).  Therefore, it appears that even an

22  individual who is only limited to occasional "overhead" reaching (as opposed to

23  <u>all</u> bilateral reaching) would be precluded from such jobs.  <u>See</u>, <u>e.g.</u>, <u>Lane</u>, 2012

24  WL 94567, *3 (jobs of cashier II and office helper which require "frequent

25  reaching" appeared to exceed plaintiff's abilities which precluded all "overhead

26  reaching bilaterally").

27      Third, since the vocational expert did not acknowledge that there was a

28  conflict between her testimony and the DOT, and the ALJ never asked if there was

8

1   such a conflict, neither the vocational expert nor the ALJ attempted to explain or
2   justify the foregoing deviation in any manner.  (AR 14-15, 43-46).  The ALJ's
3   conclusory assertion that "[p]ursuant to SSR 00-4p, the vocational expert's
4   testimony is consistent with the information contained in the [DOT]" (AR 29) is
5   insufficient.  See Massachi, 486 F.3d at 1152-53.

6          Fourth, since the Court cannot conclude that the ALJ posed a hypothetical
7   question to the vocational expert which accounted for all of plaintiff's limitations,
8   and the ALJ's decision does not explain the apparent inconsistency between
9   plaintiff's reaching limitations and the requirements of the jobs of cashier II and
10  assembler for plastic hospital parts, the vocational expert's testimony, which the
11  ALJ adopted, could not serve as substantial evidence supporting the ALJ's
12  determination at step five that there were jobs in the national economy that
13  plaintiff could perform.  Pinto, 249 F.3d at 846; Tackett, 180 F.3d at 1101.

14         Finally, the Court cannot find such errors harmless as defendant points to no
15  other persuasive evidence in the record which could support the ALJ's
16  determination at step five that plaintiff was not disabled.  See, e.g., Pinto, 249 F.3d
17  at 846 (remand warranted where ALJ found claimant not disabled at step four
18  based "largely" on vocational expert's testimony that conflicted with DOT, neither
19  ALJ nor vocational expert addressed the deviation, and ALJ otherwise "made very
20  few findings"); cf. Tommasetti v. Astrue, 533 F.3d 1035, 1042 (9th Cir. 2008)
21  (ALJ erred in finding that claimant could return to past relevant work based on
22  vocational expert's testimony that deviated from DOT because ALJ "did not
23  identify what aspect of the [vocational expert's] experience warranted deviation
24  from the DOT, and did not point to any evidence in the record other than the
25  [vocational expert's] sparse testimony" to support the deviation, but error was
26  harmless in light of ALJ's alternative finding at step five, which was supported by
27  substantial evidence, that claimant could still perform other work in the national
28  and local economies that existed in significant numbers ).

1    **V.     CONCLUSION**[3]

2          For the foregoing reasons, the decision of the Commissioner of Social

3    Security is reversed in part, and this matter is remanded for further administrative

4    action consistent with this Opinion.[4]

5          LET JUDGMENT BE ENTERED ACCORDINGLY.

6    DATED:  September 21, 2012

7

8                                        _____/s/_____

9                                        Honorable Jacqueline Chooljian

10                                       UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21    _____

22          [3]The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's
decision, except insofar as to determine that a reversal and remand for immediate payment of

23    benefits would not be appropriate.  On remand, however, the ALJ may the wish to reconsider
whether the decision adequately accounted for the lay witness statement plaintiff supplied for the

24    record.

25          [4]When a court reverses an administrative determination, "the proper course, except in rare
circumstances, is to remand to the agency for additional investigation or explanation."

26    Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and
quotations omitted).  Remand is proper where, as here, additional administrative proceedings

27    could remedy the defects in the decision.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir.

28    1989).